IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| PHILLIP L. WATSON, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 6:09-CV-1676-VEH |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
|    Defendant. | ) |

## MEMORANDUM OPINION[1]

Plaintiff Phillip Lamont Watson (hereinafter "Mr. Watson") brings this action pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act. He seeks review of a final adverse decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner"), who denied his application for Supplemental Security

---

[1] The undersigned has rendered several other comparable decisions which address the inadequacies of the respective ALJ's RFC determinations from which the framework, analysis, and disposition of this case persuasively flow. *See, e.g., Mahaley v. Astrue*, No. 5:09-CV-0347-VEH, (Docs. 12, 13) (N.D. Ala. Feb. 18, 2010) (reversing and remanding under similar circumstances in which the court found that the ALJ's RCF finding was not supported by substantial evidence); *Glover v. Astrue*, No. 3:09-CV-0033-VEH, (Docs. 15, 16) (N.D. Ala. Mar. 4, 2010) (same); *Johnson v. Astrue*, No. 3:08-CV-1761-VEH, (Docs. 15, 16) (N.D. Ala. Mar. 12, 2010) (same); *Martin v. Astrue*, No. 5:09-CV-1029-VEH, (Docs. 11, 12) (N.D. Ala. Mar. 25, 2010) (same).

Income (hereinafter "SSI") and Disability Insurance Benefits (hereinafter "DIB").[2]

Mr. Watson timely pursued and exhausted his administrative remedies available before the Commission. The case is ripe for review pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act.[3]

## FACTUAL AND PROCEDURAL HISTORY

Mr. Watson was 42 years of age at the time of his hearing before the administrative law judge (hereinafter "ALJ"). (Tr. 19). He has completed the sixth grade, but has not received a GED. (Tr. 178). His past work experiences include employment as a construction laborer, a cabinet setter supervisor, and an electrician helper. (Tr. 51).

Mr. Watson claims that on June 13, 2000, he fell from a bridge 49 feet above the ground and landed on the right side of his body. (Tr. 32, 38). The fall was an on-the-job injury which Mr. Watson settled as a workman's compensation claim. (Tr. 32). The fall resulted in a broken femur, damage to the right side of his body, and the

---

[2] In general, the legal standards applied are the same regardless of whether a claimant seeks SSI or Disability Insurance Benefits ("DIB") under the Social Security Act. However, separate, parallel statutes and regulations exist for SSI and DIB claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

[3] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

onset of periodic seizures. (Tr. 31).

After the fall, Mr. Watson moved in with his parents and continues to rely on them for financial support. (Tr. 37, 39). Moreover, he alleges that the pain from the fall causes him to spend multiple hours a day lying down and causes him not to be able to engage in any housework or physical activity. (Tr. 44-45). Additionally, he claims his pain level is "anywhere [from] five to six" out of ten while he is not engaged in physical activity. (Tr. 45). If he is engaged in physical activity, his pain level can be as high as eight or nine out of ten. (Tr. 46). For the pain, Mr. Watson currently takes Tylenol and claims not to be able to afford to consult a physician. (Tr. 41-42). However, Mr. Watson received pain management treatment at the Walker Wellness Center from September to December of 2005. (Tr. 33, 214-219). Furthermore, as a result of his current pain levels, Mr. Watson states that he is depressed. (Tr. 47).

As to Mr. Watson's last period of work, there are inconsistencies. Mr. Watson stated at the hearing before the ALJ that his last day of work was in the summer of 2004. (Tr. 40). However, an October 2005 Walker Wellness Center medical record states that he was working 14 hour days in October of 2005. (Tr. 217). Additionally, in a July 2006 psychological evaluation performed by Dr. Blotcky, Mr. Watson claimed to have last worked in October 2003 as an electrician helper. (Tr. 209).

Mr. Watson filed his application for DIB and SSI benefits on January 30, 2006. (Tr. 12). These claims were denied by the Commissioner on May 22, 2006. (Tr. 61). Mr. Watson filed a written request for hearing by an ALJ on June 12, 2006. (Tr. 74). The hearing was held on July 28, 2008. (Tr. 28). The ALJ subsequently denied Mr. Watson's application on March 5, 2009. (Tr. 20). On March 12, 2009, Mr. Watson filed a request for review of the ALJ decision. (Tr. 8). The Appeals Council denied his application for review on June 22, 2009. (Tr. 1).

Mr. Watson filed a Complaint with this court on August 21, 2009, which asks for a judicial review of the ALJ's decision. (Doc. 1). This court has carefully considered the record and, for the reasons stated below, reverses and remands the decision of the ALJ.

## STANDARD OF REVIEW

The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales,* 402 U.S. 389, 390 (1971); *McRoberts v. Bowen,* 841 F.2d 1077, 1080 (11th Cir. 1988); *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1983); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth*, 703 F.2d

at 1239. This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*.

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[4] The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant

---

[4] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, as current through September 2, 2010.

is disabled. 20 C.F.R. § 404.1520(a)(4)(I-v). The Commissioner must determine in sequence:

(1)  whether the claimant is currently employed;
(2)  whether the claimant has a severe impairment;
(3)  whether the claimant's impairment meets or equals an impairment listed by the Secretary;
(4)  whether the claimant can perform her past work; and
(5)  whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord, McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord*, *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id*.

## **FINDINGS OF THE ADMINISTRATIVE LAW JUDGE**

The ALJ concluded that Mr. Watson has not engaged in substantial gainful

activity after the alleged onset of his disability on October 1, 2003.[5] (Tr. 13). Additionally, the ALJ found that Mr. Watson has multiple severe impairments. Specifically, these are functional limitations, the status of his right wrist and right femur after they had been fractured, and major depressive disorder. *Id.* The ALJ also established that the impairments do not meet or medically equal a listing in the Listing of Impairments found in 20 C.F.R. Part 404 Appendix 1, Subpart P, of the Social Security Regulations. (Tr. 16).

The ALJ further found that Mr. Watson was unable to perform his past relevant work as a construction laborer, an electrician helper, and a cabinet setter supervisor. (Tr. 19). After considering the testimony of Mr. Watson and the vocational expert (hereinafter "VE"), the ALJ concluded that Mr. Watson's physical residual functional capacity (hereinafter "RFC") allows for him to perform a reduced range of light work.[6] (Tr. 16). Moreover, the ALJ stated that, as to Mr. Watson's mental RFC, he

---

[5] Mr. Watson amended this onset date at the hearing in front of the ALJ to July 17, 2004, the day after he was awarded a closed period of disability on a prior application. (Tr. 34-35).

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do

is able to "understand, remember, and carry out simple instructions; and respond appropriately to supervisors, coworkers, the general public, and normal work pressures." *Id.*

After considering Mr. Watson's residual functional capacity, age, education, and work experience and consulting the Medical- Vocational Guidelines at 20 C.F.R. Part 404, Subpart P, Appendix 2 (hereinafter "the Grids"), the ALJ determined that Mr. Watson is able to engage in other employment. (Tr. 19). This includes such jobs as commercial cleaner, hand packer, and product assembler, of which there are 20,000 existing in Alabama. (Tr. 20). Consequently, the ALJ concluded that Mr. Watson has not been disabled at any time since the alleged onset date and therefore found that his application for DIB and SSI was due to be denied. *Id.*

## ANALYSIS

The court can reverse a finding of the Secretary if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th

---

sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

Cir. 1980)).[7]

Mr. Watson asserts that the ALJ's decision is not supported by substantial evidence and that the position of the Commissioner is not substantially justified. (Doc. 1). This court finds numerous inconsistencies in, and the lack of any underlying medical opinion in support of, the ALJ's mental RFC finding that Mr. Watson is able to appropriately respond to supervisors and coworkers and agrees with Mr. Watson, that under the circumstances, the ALJ has committed reversible error.[8]

I. **IN THE ABSENCE OF SUPPORTIVE MEDICAL EVIDENCE, THE ALJ'S MENTAL RFC DETERMINATION THAT MR. WATSON IS ABLE TO RESPOND APPROPRIATELY TO SUPERVISORS AND COWORKERS IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE**.

The ALJ must "take into account and evaluate the record as a whole." *McCruter v. Bowens* 791 F.2d 1544, 1548 (11th Cir. 1986). "It is not enough to discover a piece of evidence which supports the decision, but to disregard other contrary evidence." *Id*. In this case, the ALJ's opinion is materially deficient in this respect for a multitude of reasons.

First, the ALJ found that Mr. Watson's mental RFC included that, "he is able

---

[7] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[8] As a result, the court does not reach the merits of other issues presented on appeal.

to understand, remember, and carry out simple instructions; and respond appropriately to supervisors, coworkers, the general public, and normal work pressures." (Tr. 16). In support of his mental RFC finding, the ALJ purports to exclusively rely on a mental evaluation of Mr. Watson by Dr. Whitehead, a licensed psychologist, which occurred on April 21, 2006. (Tr. 17, 177). Dr. Whitehead found that Mr. Watson can concentrate and persist on simple tasks, that he can interact with the general public, that he can adapt to simple environments, and that he can understand and remember simple instructions. (Tr. 180-81). The ALJ found Dr. Whitehead's opinion to be credible because he is, "a specialist, and his opinion is about medical issues related to his speciality." (Tr. 17).

Another psychological evaluation was performed on Mr. Watson by Dr. Blotcky, a psychiatrist, on July 5, 2006. (Tr. 209). Dr. Blotcky found that because of Mr. Watson's combination of depressive disorder and limited intellect, he has moderate or moderately severe impairments in his ability to: (1) understand, carry out, and remember instructions; (2) appropriately respond to supervision; (3) appropriately respond to coworkers; (4) respond to work pressures; (5) perform simple tasks; (6) perform complex tasks; (7) perform repetitive tasks; and (8) perform varied tasks. (Tr. 212-13). The ALJ did not find Dr. Blotcky's opinion concerning Mr. Watson's mental RFC to be credible and therefore gave it little weight when

determining Mr. Watson's mental RFC. (Tr. 18-19).

However, Dr. Whitehead also opined that Mr. Watson's ability to work with coworkers and/or supervisors is moderately impaired. (Tr. 181). Similarly, Dr. Blotcky found that Mr. Watson is moderately to moderately severely impaired in his ability to respond appropriately to supervision and moderately impaired in his ability to respond to his co-workers. (Tr. 212). Despite the similarity between the findings of these two doctors, the ALJ inconsistently relied on Dr. Whitehead's opinion but rejected Dr. Blotcky's "opinion [as] not consistent with the record as a whole." (Tr. 19).

In a comparable case, *Holmes v. Astrue*, 1:09-CV-01523-AJB, 2010 WL 2196600, at *16 n.17 (N.D. Ga. May 27, 2010), the court held that the ALJ's decision was undermined because he credited and discredited different parts of the same report. The court indicated that the ALJ was required to provide an explanation for how he considered and resolved inconsistent uses of medical opinions but that the ALJ failed to do so in this case. *Id.* As a result of this and other errors, the court found that the "ALJ erred in evaluating the medical opinions" and that the ALJ "made his RFC determination without properly considering the medical opinions." *Id.* at *20.

Similarly, in this case, the ALJ purports to discredit Dr. Blotcky and credit Dr.

11

Whitehead without giving a sufficient explanation as to why Dr. Blotcky's testimony is "not consistent with the record as a whole" despite the fact that his finding (that Mr. Watson has a moderate impairment in interacting with coworkers and moderate to moderately severe impairment in interacting with supervisors) (Tr. 19, 212) was the same finding reached by Dr. Whitehead as to Mr. Watson's ability to interact with coworkers and a similar finding as to his ability to respond to supervisors. (Tr. 181).

Second, despite the fact that the ALJ chose to discredit Dr. Blotcky, although his findings on Mr. Watson's ability to respond to coworkers and supervisors were exact to Dr. Whitehead's conclusions in some respects (*i.e.*, coworkers) and similar as to others (*i.e.*, supervisors), the ALJ's mental RFC finding does not even correctly state Dr. Whitehead's opinion as to Mr. Watson's ability to interact with coworkers and supervisors. The ALJ states that mentally, Mr. Watson is able to "respond appropriately to supervisors [and] coworkers." (Tr. 16). However, this statement is not supported by the medical evidence, as Dr. Whitehead's opinion instead is that Mr. Watson's ability to respond to coworkers and supervisors is moderately impaired. (Tr. 181).

To allow for meaningful review, the ALJ must explicitly state good reasons for his rejection of the psychological evaluations which support a finding of greater restrictions on plaintiff's mental RFC. Furthermore, the ALJ may not arbitrarily reject

uncontroverted medical evidence. *Walden v. Schweiker,* 672 F.2d 835, 839 (11th Cir. 1982).

Here, the ALJ's unexplained selection of only the more positive aspects of Mr. Watson's mental health reports found in Dr. Whitehead's evaluation do not negate the other findings set forth in the remainder of Dr. Whitehead's and Dr. Blotcky's evaluations, which support a finding of further restrictions based on Mr. Watson's mental impairment.

Similarly, the court in *Dusterhoft v. Astrue*, 5:07-CV-466-OC-10GRJ, 2009 WL 800141, at *7 (M.D. Fla. Mar. 25, 2009), found that the ALJ's mental RFC was not supported by substantial evidence when the ALJ failed to consider or discuss all of the medical opinions suggesting that the claimant had other impairments. Reversing the ALJ's decision, the court stated, "The ALJ did not discuss any of these other limitations, nor did he discuss what impact they would have on Plaintiff's ability to perform . . . work." *Id.* at *6.

In this case, the psychological medical records, whether considered in isolation or together, do not provide substantial evidence in support of the ALJ's mental RFC determination that Mr. Watson is capable of appropriately responding to coworkers and supervisors. As a result of the ALJ's failure to base his mental RFC (and specifically, his statement that Mr. Watson is able to appropriately respond to

13

supervisors and coworkers) on <u>any</u> medical records, his decision is not supported by substantial evidence.

## II.   THE ALJ DID NOT ASK A PROPER HYPOTHETICAL QUESTION TO THE VE CONCERNING MR. WATSON'S MENTAL RFC.

Finally, the ALJ failed to include Dr. Whitehead's finding that Mr. Watson's ability to interact with coworkers and supervisors is moderately impaired in his hypothetical question to the VE. (Tr. 54). In order for the ALJ to be able to properly rely on the VE's testimony, he must pose a correct hypothetical question to the VE about the plaintiff's impairments. That is to say, in order for the vocational expert's testimony to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). If the ALJ's hypothetical questions to the VE do not contain all of the claimant's impairments, the VE's opinions are not supported by substantial evidence. *Banks v. Astrue*, 7:08-CV-395-VEH (N.D. Ala. Oct. 21, 2008).

In considering the VE's opinion as to Mr. Watson's mental RFC, the ALJ asked the VE:

> Assume a person of Mr. Watson's age, education, work history. Assume further this person is able to understand, remember, and carry out simple instructions, respond appropriately to supervisors, co-workers, and respond appropriately to normal work pressures. Could such a person do these jobs that you just described [cleaner, hand packer, product sander]?

(Tr. 54). The VE responded that such a person could perform those jobs. *Id.* However, the ALJ's question failed to contain Dr. Whitehead's finding concerning Mr. Watson's limited ability to interact with coworkers and supervisors. Because the hypothetical question to the VE did not contain this restriction, the ALJ cannot properly rely on the VE's testimony concerning Mr. Watson's mental RFC. *Jones v. Apfel*, 190 F.3d at 1228. Further, as a result of not being able to properly rely on the testimony elicited from the VE, the ALJ's decision is not supported by substantial evidence for this additional reason. *Id.*

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision was not supported by substantial evidence. More specifically, while the ALJ attempted to discredit Dr. Blotcky's mental assessment of Mr. Watson, the ALJ provided no adequate rationale for doing so, especially when Dr. Whitehead drew the <u>same</u> conclusion (as Dr. Blotcky) about Mr. Watson's restricted ability to interact with coworkers and a <u>similar</u> conclusion (to Dr. Blotcky's) about Mr. Watson's ability to interact with supervisors, and yet the ALJ purported to fully accept <u>all</u> of Dr. Whitehead's opinions. Furthermore, the ALJ failed to include Dr. Whitehead's finding that Mr. Watson has a moderate impairment in his ability to respond to

coworkers and supervisors in the hypothetical he posed to the VE. Accordingly, the decision of the Commissioner is due to be reversed and remanded. A separate order in accordance with this memorandum opinion will be entered.

**DONE** and **ORDERED** this the 24th day of September, 2010.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge